| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I | | |
| JULIO ENRIQUE RUIZ COLÓN<br><br>Peticionario<br><br>v.<br><br>EDUARDO RUIZ COLÓN<br><br>Recurrido | KLCE202300658 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso núm.:<br>A AC2016-0040<br><br>Sobre: División de comunidad |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

El Tribunal de Primera Instancia ("TPI") aceptó una consignación dirigida a que un hermano pudiese comprar del otro su participación en un inmueble común. Según se explica en detalle a continuación, concluimos que erró el TPI, pues la consignación no se hizo de conformidad con los términos de la sentencia que dicho foro dictó y lo actuado por el TPI es, además, incompatible con su decisión anterior de rechazar una consignación realizada por el otro hermano.

I.

La acción de referencia ("la Demanda"), sobre liquidación de comunidad hereditaria, se presentó por el Sr. Julio Enrique Ruiz Colón (el "Peticionario" o "Primer Hermano") en contra de los integrantes de la sucesión de Efraín Ruiz Méndez: el Sr. Eduardo Ruiz Colón (el "Segundo Hermano" o el "Recurrido"), el Sr. Josué Ruiz Colón (el "Tercer Hermano") y la Sa. María Magdalena Colón Santos (la "Viuda"). El Primer Hermano alegó que había adquirido los intereses de la Viuda y del Tercer Hermano sobre un inmueble del caudal hereditario (la "Propiedad"). De esta forma, el Primer

Hermano obtuvo una participación en la Propiedad de un 83.34% y el Segundo Hermano quedó con una participación de un 16.66%.

Según una sentencia emitida por el TPI el 3 de mayo de 2019 (la "Sentencia"), el Primer Hermano y el Segundo Hermano (los "Hermanos") tendrían 30 días desde que la misma adviniese final y firme para comprar la participación del otro en la Propiedad mediante la correspondiente consignación ante el TPI.   El TPI dispuso que, si ello no ocurría, la Propiedad sería vendida en pública subasta, de cuyo producto se satisfarían las participaciones de cada uno.   En efecto, la Sentencia dispone al respecto como sigue (énfasis suplido):

> Conforme a las determinaciones de hechos y conclusiones de derecho esbozadas, el Tribunal concede a las partes, una vez la sentencia advenga final y firme, **30 días para consignar en el Tribunal la cantidad que le corresponde en dinero a la otra parte** a base de la proporción que pertenece a cada uno en el bien [...]; esto, de interesar alguno adquirir la propiedad inmueble, único bien de la Sucesión.
>
> **Si transcurrido dicho término ninguna parte consigna** la cuantía conforme indicado, el Tribunal, a solicitud de parte, ordenará al Alguacil Regional **vender la propiedad inmueble en pública subasta** y consignar el valor total pagado para ser distribuido por el Tribunal conforme la participación de cada parte.[1]

Así las cosas, el 7 de abril de 2021, el Primer Hermano, por derecho propio, consignó en la Secretaría del TPI la suma de $13,494.60 como pago de la participación del Segundo Hermano en la Propiedad.[2]

El 9 de abril de 2021, el TPI notificó una *Orden* concediéndole un término de 15 días al Segundo Hermano para que expusiera su postura en cuanto a la consignación.   El 14 de mayo de 2021, el Primer Hermano reiteró su petición de que se le ordenase al Segundo

---

[1] Véase Apéndice 2 del Recurso.
[2] Véase Autos Originales, Tomo II, *Moción Informativa* del 7 de abril de 2020 y Anejos (Recibo Oficial #17117 de la Unidad de Cuentas del TPI).

Hermano comparecer a otorgar la escritura que le traspasara la Propiedad.

El 20 de mayo de 2021, el Segundo Hermano reconoció que el Primer Hermano había consignado la participación que le correspondía sobre la Propiedad.  Sin embargo, sostuvo que él también interesaba adquirir la Propiedad, por lo cual le había extendido una oferta al Primer Hermano para comprarle su participación y asumir los gastos de la escritura y su correspondiente inscripción en el Registro de la Propiedad.

Luego de varios otros trámites, de los cuales surge que no había acuerdo entre los Hermanos sobre quién compraría a quién, el TPI, mediante una orden emitida el 2 de julio de 2021, dispuso:

> Véase Sentencia del 3 de mayo de 2019, la cual expresa la manera de disponer de la propiedad si no existe acuerdo entre las partes.[3]

El 12 de julio de 2021, el Primer Hermano insistió en que el TPI debía aceptar su consignación y ordenar al alguacil comparecer a firmar, por el Segundo Hermano, una escritura que le traspasara el título de la Propiedad.

El 29 de julio de 2021, el TPI emitió una *Orden* que lee como sigue: "Véase Sentencia".

Una vez más, el 22 de abril de 2022, el Primer Hermano solicitó que, a la luz de la consignación realizada, se ordenase al alguacil a firmar la escritura por el Segundo Hermano, para así traspasarle la titularidad de la Propiedad.

**El 19 de agosto de 2022, el Segundo Hermano solicitó retirar el dinero consignado por el Primer Hermano.  Indicó que había aceptado vender su participación en la Propiedad** y que estaría disponible para firmar la escritura correspondiente en las próximas dos semanas.

---

[3] *Íd.*

El 22 de agosto de 2022, el Primer Hermano solicitó que los fondos no se entregasen al Segundo Hermano sino hasta luego de que este firmase la escritura correspondiente. **El Primer Hermano no solicitó la devolución de los fondos consignados**.

Sin que el récord ofrezca explicación alguna al respecto, el TPI, mediante una Orden de 29 de agosto, ordenó que se devolviera al Primer Hermano la cuantía que este había consignado para comprar la participación de su hermano en la Propiedad.[4]

El 7 de septiembre, el Primer Hermano solicitó la reconsideración de la orden de devolución de los fondos consignados por este. El TPI denegó dicha solicitud mediante una *Orden* del 16 de septiembre, notificada el 3 de octubre.

Así las cosas, el 18 de octubre, el Segundo Hermano presentó una *Solicitud de Ejecución de Sentencia,* en la cual solicitó la venta judicial de la Propiedad. Al día siguiente, el Primer Hermano se opuso a la solicitud de ejecución de sentencia.

El 6 de diciembre, el TPI declaró con lugar la moción de ejecución de sentencia presentada por el Segundo Hermano.

El 21 de diciembre, el Primer Hermano se opuso, una vez más, a lo solicitado por el Segundo Hermano y reiteró su interés en comprar la Propiedad. El 23 de diciembre, el TPI denegó la solicitud del Primer Hermano.

El 23 de enero, el Primer Hermano, esta vez asistido por representación legal, reiteró que el TPI había errado al ordenar la devolución de la suma que él había consignado, especialmente tomando en cuenta que la misma había sido aceptada por el Segundo Hermano. Por tanto, planteó que el TPI, en vez, debió velar por que se otorgara la correspondiente escritura de traspaso al

---

[4] Véase Recibo Oficial #1266 de la Unidad de Cuentas del TPI del 12 de septiembre de 2022 y Carta del TPI del 14 de septiembre de 2022 dirigida al Primer Hermano en la que se le notifica el envío del Cheque núm. 1266 por concepto de la devolución de los fondos consignados en el caso.

Primer Hermano. Arguyó que, al haberse realizado la consignación por el Primer Hermano, y aceptado la misma por el Segundo Hermano, el TPI ya no podía ordenar la venta judicial de la Propiedad.

Mientras tanto, el 16 de febrero, el Segundo Hermano informó que había consignado en la Secretaría del TPI la suma de $67,910.40 con el fin de comprar la participación del Primer Hermano en el Inmueble.

**Mediante una Orden emitida al día siguiente, y notificada el 21 de febrero (la "Orden"), el TPI aceptó la consignación hecha por el Segundo Hermano.**

El 27 de febrero, el Primer Hermano presentó una moción con la cual devolvió el cheque que el TPI le había expedido con el fin de devolver el dinero anteriormente consignado por este. En la misma, indicó lo siguiente:

> El 12 de septiembre de 2022, la unidad de cuentas emitió el cheque #1266 p[o]r la cantidad de $13,494.60 a favor del [Peticionario]. Dicho Cheque no fue aceptado por el [Peticionario] y se acompaña para que la unidad de cuentas, lo cancele y ponga a disposición del [Recurrido], una vez este firme la escritura de cesión de participación, los fondos consignados.

Ese mismo día (27 de febrero), el Primer Hermano solicitó la reconsideración de la Orden; planteó que, desde agosto de 2022, el Segundo Hermano había aceptado vender su participación en la Propiedad por la cantidad consignada por el Primer Hermano, por lo que aquél estaba impedido de ir contra sus propios actos. Por tanto, solicitó que se "dej[ase] sin efecto la orden del 17 de febrero de 2023" (la Orden), mediante la cual el TPI había aceptado la consignación realizada por el Segundo Hermano.

El 10 de mayo, el TPI notificó una *Resolución y Orden* mediante la cual denegó la referida moción de reconsideración y dispuso que las partes debían comparecer, en 30 días, a otorgar una

escritura de traspaso al Segundo Hermano, so pena de que el Alguacil Regional compareciera en sustitución del Primer Hermano.

Inconforme, el 9 de junio, el Primer Hermano presentó el recurso que nos ocupa; formula los siguientes señalamientos de error:

1. Erró el TPI al aceptar la consignación por parte del Demandado peticionado, sin permitir a la parte demandante – Peticionaria, Oponerse a la misma conforme ordena la Regla 8.4 de Procedimiento Civil, lo que violenta el derecho a un debido proceso de ley del Demandante Peticionario, tanto en su modalidad sustantiva, como procesal.

2. Erró el TPI al aceptar la consignación por parte del Demandado peticionado, cuando existía un contrato de transacción judicial válido entre las partes y el demandado – peticionado actuó en contra de sus propios actos y no notificó adecuadamente su moción.

Ordenamos al Segundo Hermano mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la decisión recurrida; el Segundo Hermano compareció. Con el beneficio adicional de los autos del caso, resolvemos[5].

II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders, et al v. BBVAPR*, 185 DPR 307, 337-338 (2012), *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Contrario al recurso de apelación, el tribunal revisor tiene discreción para decidir si expide o no el *certiorari*. Ahora, la discreción no es irrestricta y debe ejercerse de forma razonable, procurando siempre una solución justa. *Medina*

---

[5] Contrario a lo planteado por el Segundo Hermano, la moción de reconsideración del Primer Hermano se refería explícitamente a la Orden, por lo cual interrumpió el término para solicitar la revisión de la misma. No tiene pertinencia que el Segundo Hermano entienda que son erróneos los fundamentos específicos que el Primer Hermano escogió para apoyar su moción de reconsideración.

*Nazario*, 194 DPR en la pág. 729; *IG Builders*, 185 DPR a la pág. 338; *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, indica las resoluciones u órdenes interlocutorias susceptibles de revisión por el Tribunal de Apelaciones mediante *certiorari*. Ahora bien, la citada regla no se extiende a las resoluciones post-sentencia. Ello porque estas determinaciones no pueden ser revisadas en apelación, pues no habrá sentencia posterior que se pueda apelar. *G Builders*, 185 DPR a la pág. 339.

Por tanto, en este caso, al solicitarse la revisión de una determinación post-sentencia, la Regla 52.1, *supra*, no restringe nuestra autoridad para expedir el auto solicitado. Adviértase que el asunto traído ante nuestra consideración no es susceptible de revisión posterior en el contexto de la apelación de una sentencia.

Así pues, al evaluar la procedencia de la expedición de un auto de *certiorari* post-sentencia, debemos recurrir a la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La precitada regla establece los criterios que se deben examinar al determinar si expedimos un auto de *certiorari*:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento

indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

Concluimos que erró el TPI al aceptar la consignación hecha por el Segundo Hermano. En primer lugar, dicha consignación es contraria a la Sentencia, pues fue hecha años luego de que la misma adviniese final y firme. Sin embargo, en la Sentencia se dispuso que tal consignación debía realizarse dentro de los 30 días de que esta adviniese final y firme.

En segundo lugar, la aceptación de esta segunda consignación es incompatible con que dicho foro hubiese, anteriormente, rechazado la consignación realizada por el Primer Hermano (la "Primera Consignación"). De hecho, en todo caso, había más razones para aceptar la Primera Consignación, en comparación con la hecha por el Segundo Hermano, pues (i) el Segundo Hermano había informado al TPI que aceptaba la Primera Consignación y que comparecería a otorgar una escritura para traspasar la Propiedad al Primer Hermano, (ii) la Primera Consignación se hizo mucho antes que la consignación realizada por el Segundo Hermano, y (iii) el Primer Hermano ha sido consecuente en su interés por adquirir la Propiedad; no así el Segundo Hermano.

Al haber rechazado, sin razón aparente, la Primera Consignación, el TPI ya no podía aceptar una posterior consignación por la otra parte. El TPI únicamente podía: (i) dejar sin efecto lo actuado en cuanto a la Primera Consignación, permitiendo así que el Primer Hermano consigne nuevamente la participación de su hermano, sobre la base de que el Segundo Hermano manifestó formalmente su aceptación de la misma, con lo cual se concretó el acuerdo contemplado por la Sentencia, o (ii) determinar que no hubo, ni hay, tal acuerdo y, al haber transcurrido el término que las

partes tenían para consignar bajo la Sentencia, procede la venta judicial de la Propiedad.

En la continuación del trámite de referencia, y salvo que las partes lleguen a algún acuerdo, el TPI deberá optar por una de las dos alternativas señaladas en el párrafo anterior. De optarse por la venta judicial de la Propiedad, resaltamos que ello no impediría a cualquiera de los Hermanos licitar en la correspondiente subasta.

IV.

Por los fundamentos expuestos, se expide el auto de *certiorari* solicitado y se revoca la *Orden* del 17 de febrero de 2023; se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones